Christopher P. Ridout (SBN 143931)
christopher.ridout@zimmreed.com
Caleb LH Marker (SBN 269721)
caleb.marker@zimmreed.com
ZIMMERMAN REED, LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel: (877) 500-8780; Fax: (877) 500-8781

*Local Counsel for Plaintiffs*

Timothy J. Becker (MN Bar No. 256663) (*pro hac anticipated*)
tbecker@johnsonbecker.com
Jacob R. Rusch (MN Bar No. 391892) (*pro hac anticipated*)
jrusch@johnsonbecker.com
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Tel: (612) 436-1800; Fax: (612) 436-1801

*Trial Counsel for Plaintiffs*

(Additional Counsel Listed On Signature Page)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDE K. BOCONVI and JAMES R. MACK | Case No.: 3:17-cv-02623 |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| VELOCITY EXPRESS, LLC, a wholly-owned subsidiary of Dynamex Operations East, LLC[1], TRANSFORCE, INC., and DYNAMEX OPERATIONS EAST, LLC, | Complaint Filed: May 5, 2017 |
| Defendants, | |

---

[1] Formerly Dynamex Operations East, Inc.

Plaintiffs, CLAUDE K. BOCONVI and JAMES R. MACK, by and through their undersigned attorneys, hereby bring this Complaint against Defendants, TRANSFORCE, INC., DYNAMEX OPERATIONS EAST, LLC, and VELOCITY EXPRESS, LLC (collectively, "Defendants"), and state as follows:

**<u>INTRODUCTION</u>**

1.     This case represents the individual claims of two Plaintiffs—CLAUDE K. BOCONVI and JAMES R. MACK—who filed Consents to Sue in a Fair Labor Standard Act collective action pending before the Honorable Jon Tigar styled as: *Phillip Flores, et al. v. Velocity Express, LLC, et al.*, 3:12-cv-05790-JST. *See* Civil Docket Sheet, attached hereto as Exhibit 1.

2.     On September 24, 2015 the Parties stipulated to establish a "Bellwether Trial Process" whereby individual plaintiffs' claims would be selected for discovery and ultimately trial. In connection with that Stipulation, the Parties expressly agreed to waive any issues implicating personal jurisdiction and consent to the jurisdiction of Judge Tigar to try the individual cases. *See* Case Management Order No. 2: Bellwether Trials, Dkt. No. 188, attached hereto as Exhibit 2.   Boconvi's and Mack's cases were selected from the broader group for the first wave of individual Bellwether Trials.

3.     In an effort to facilitate the Bellwether Process, the Parties intend to file a stipulation with the Court incorporating the relevant pleadings, memorandum and Orders from the *Flores* matter for use in this case for purposes of any future appeal on those issue impacting the Boconvi and Mack. In reaching this Stipulation, the Parties expressly note the individual action relates back to the date Mack and Boconvi filed their original Consents to Sue with the

*Flores* Court.

4. This is an individual action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, CLAUDE BOCONVI ("Boconvi") and JAMES MACK ("Mack") (collectively "Plaintiffs"). As set forth in the Court's Order Granting Plaintiffs' Motion for Partial Summary Judgment, Mack and Boconvi are employees of Defendants, DYNAMEX OPERATIONS EAST, LLC, and VELOCITY EXPRESS, LLC. *See generally Order Granting Plaintiffs' Motion for Partial Summary Judgment*, Dkt. No. 260, attached hereto as Exhibit 3. Plaintiffs claim that Defendants' willfully violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Plaintiff JAMES MACK also seeks to bring claims for violations of the California Labor Code §§ 226, 510, 512, 1194, and 2802, the California Industrial Welfare Commission Wage Order No. 9, the California Business & Professional Code § 17200, *et seq.*, and California common law as a state-wide class action pursuant to Fed. R. Civ. P. 23.

5. Plaintiffs were subjected to Defendants' policy and practice of failing to pay the Plaintiffs an overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

6. Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs as independent contractors, as opposed to employees, at all times in which they worked as delivery drivers for Defendants. Defendants failed to pay Plaintiffs overtime benefits that they were entitled to under applicable federal and state laws. Defendants failed to provide accurate wage statements with hours worked within 30 days of the end of their employment. Defendants failed to provide proper mileage reimbursement as required under state law and under Wage Order No. 9 of the California Industrial Welfare Commission. To remedy these practices,

Plaintiffs bring this action seeking recovery for Defendants violation of the FLSA and corresponding state laws.

7. Plaintiffs are former delivery drivers who were improperly classified by Defendants as independent contractors. Defendants' improper classification resulted in the failure to properly compensate them with overtime pay as required under applicable federal and state laws, as well as the meal break, rest periods, mileage reimbursement, and proper wage statements.

8. Plaintiffs seek an award of liquidated damages and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

10. This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the FLSA and also pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy in this action exceeds $75,000, exclusive of interest and costs, and because the parties are residents of different states.

11. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

12. This Court has personal jurisdiction over each Plaintiff as a direct result of the Parties' Stipulation and consent to try these individual cases before the *Flores* Court. *See* Dkt. No. 188, at 2.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b-d) because Defendants reside within this District, conducts substantial business within this District, and because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.

## PARTIES

14. Plaintiff, JAMES MACK, is an individual who resides in Lemon Grove, California. MACK worked for Defendants as a delivery driver. Upon information and belief MACK worked for Defendants as a delivery driver from April 23, 2009 until March 26, 2013 and has executed his consent to sue form which is attached hereto as Exhibit 4.

15. Plaintiff, CLAUDE BOCONVI, is an individual who resides in Houston, Texas. BOCONVI worked for Defendants as a delivery driver. Upon information and belief BOCONVI worked for Defendants as a delivery driver from January 21, 2011 until March 7, 2011 and has executed his consent to sue form which is attached hereto as Exhibit 5.

16. Defendant VELOCITY EXPRESS was a Delaware limited liability company, with its primary place of business located at 1 Morningside Drive N., Building B, Suite 300, Westport, Connecticut 06880, and places of business at various locations in California and Texas.

17. Defendant VELOCITY EXPRESS is registered to do business in California and can be served through its statutory agent CSC-Lawyers Incorporating Service located at 2710

Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

18. Defendant DYNAMEX OPERATIONS EAST, LLC, is a Delaware limited liability corporation with its primary place of business located at 5429 LBJ Freeway Suite 1000 Dallas, TX 75240.

19. Defendant DYNAMEX OPERATIONS EAST, LLC, is registered to do business in California and can be served through its agent for service of process Capitol Corporate Services, Inc., at 455 Capitol Mall Complex, Suite 217, Sacramento, California, 95814.

20. TRANSFORCE, INC. is a foreign corporation, with its primary place of business located at 8801 Trans-Canada Highway, Suite 500, Saint-Laurent, Quebec H4S 1Z6. It is the parent corporation of DYNMAEX.

21. DYNAMEX, through its parent corporation TRANSFORCE, INC., acquired VELOCITY on or about January 17, 2013, and completed the acquisition process encompassing "all the shares of Velocity Express . . . and its subsidiaries" on February 4, 2013. *See Exhibits D* and E. DYNAMEX is the successor in interest to VELOCITY. *See generally Order Granting Plaintiffs' Motion as to Successor Liability,* Dkt. No. 156, *Flores et. al. v Velocity et. al.*, 3:12-cv-05790-JST.[2]

22. The acquisition was completed through a merger whereby DYNAMEX acquired VELOCITY and TRANSFORCE was the guarantor.

23. The ultimate parent corporation of DYNAMEX is TRANSFORCE.

24. With its acquisition, TRANSFORCE further enhanced its "density and

---

[2] Per the Agreement of the Parties, the *Flores* Fourth Amended Complaint is attached hereto as Exhibit 6 and incorporated by reference. The letter Exhibits set forth in this Complaint, correspond to those exhibits attached to the Fourth Amend Complaint.

capabilities in the same-day North American package and courier market" and "welcomed Velocity's employees and independent contractors to the growing TransForce family." *See Exhibit E.*

25. At all times relevant to this action, DYNAMEX was a bona fide successor, subject to liability in this case under the doctrine of successor liability because VELOCITY EXPRESS'S business operations and business continuity did not change after the acquisition. *See Steinbach v. Hubbard*, 51 F.3d 843, 845-46 (9th Cir. 1995) (noting that, in the FLSA context, "successor liability can attach when 1) the subsequent employer was a bona fide successor" and "[w]hether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and the predecessor"); *see also Order Granting Motion for Partial Summary Judgment as to Successor Liability*. Plaintiffs action stems from the *Flores* action—in that they filed Consents to Sue to participate in the *Flores* Collective Action. *Flores* was commenced on November 9, 2012. TRANSFORCE acquired all shares of VELOCITY EXPRESS and its subsidiaries on February 4, 2013. Thus, successor liability also applies to DYNAMEX because they had notice of the pending legal proceedings when it purchased VELOCITY EXPRESS. *Id.* at 846 ("successor liability can attach when . . . 2) the subsequent employer had notice of the potential liability").

26. Plaintiffs are informed and believe, and allege thereon, that at all relevant times, the Defendants are responsible for the circumstances alleged herein, and proximately caused Plaintiffs and those members of the general public, to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

27. At all times herein mentioned, Defendants approved of, condoned and/or

otherwise ratified each and every one of the acts or omissions complained herein.

## **GENERAL ALLEGATIONS**

**A.**    **Defendants Maintain Total Control Over All Aspects of their Plaintiffs' Employment such that the Drivers Fail to Satisfy Any Test that they are, in Fact, Independent Contractors.**

28.    Plaintiffs were employed by Defendants as delivery drivers.  Their job duties included driving delivery vehicles, sorting delivery packages, loading and unloading delivery vehicles, and performing other miscellaneous duties as directed by their supervisors and managers.

29.    Defendants require its delivery drivers to enter into an Independent Contractor Agreement for Transportation Services ("Agreement"), which purports to describe the working relationship between Defendants and its delivery drivers.  For example, see the Agreement attached as *Exhibit A*.

30.    All of Defendants' delivery drivers operate under managerial control exercised by its corporate headquarters and regional corporate offices.   There are no material deviations in job duties or descriptions for its delivery drivers from location to location.

31.    Defendants employ uniform pay practices whereby each delivery driver is paid a "route settlement" for each delivery made.

32.    Defendants deduct a percentage of its delivery drivers' income from each paycheck in order to pay the drivers' respective "quarterly estimated Federal Income and Self-Employment taxes."

33.    Defendants require the delivery drivers to arrive at its warehouse one hour to two hours early in order to sort packages that were to be delivered that day.

---

**COMPLAINT**                                   8                      **CASE NO. 3:17-CV-02623**

34.     Defendants assign the delivery drivers to their routes, which are based either on a geographic area or specific customers.   The drivers are also provided with "route sheets," which contain suggested stop times; the delivery drivers do not have a meaningful opportunity to bid for their routes or to negotiate the rates they will be paid for their routes.

35.     Defendants also require the delivery drivers to call a company dispatcher at certain times to verbally verify deliveries and to subsequently submit written verification of their completed deliveries.

36.     Defendants also require that the delivery drivers use their own vehicles to make deliveries.   In addition, the delivery drivers are responsible for their own vehicle insurance, cargo insurance, medical insurance, social security, and taxes.

37.     Defendants also require that the delivery drivers wear company uniforms and to use company signs on their personal delivery vehicles.

38.     The route assignments that Defendants impose upon the delivery drivers creates long, twelve (12) to fourteen (14) hour workdays while also preventing the drivers from taking breaks or working for other companies.

39.     Defendants, in the past and currently, continue to misclassify the delivery drivers as independent contractors and consider them to be exempt from the minimum wage and overtime requirements of the FLSA.   The delivery drivers are employees whose job duties do not meet any of the exemptions set forth in the FLSA.   Therefore, their jobs are, in fact and in law, non-exempt from the minimum wage and overtime provisions of the FLSA.

40.     Plaintiffs, throughout the course of their employment, were directed by Defendants to work in excess of forty (40) hours per week.

**B.** **The Fair Labor Standards Act Unequivocally Establishes Plaintiffs Are Employees.**

41. The provisions of the FLSA, 29 U.S.C. § 207, require Defendants to compensate non-exempt employees who work in excess of forty (40) hours in a workweek at a rate of one and one-half times their regular rate of pay.

42. Contrary to the above statutory enactment, Defendants fails to pay the delivery drivers a minimum wage and overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

43. Defendants willfully violated the FLSA by knowingly and willfully failing to compensate Plaintiffs with a minimum wage or overtime for the hours they worked in excess of forty (40) hours per week according to the terms of the FLSA, 29 U.S.C. § 201, *et seq*.

44. By way of example only, in 2009 the U.S. Department of Labor ("DOL") initiated an enforcement action against VELOCITY EXPRESS alleging the company misclassified its delivery drivers as independent contractors. *Solis v. Velocity Express, Inc., et al*, Case No. 09-CV-0864-MO.

45. Upon information and belief, that case resolved following the DOL's successful defense of VELOCITY EXPRESS's motion for summary judgment.

46. As a result of the DOL's enforcement action, Defendants knew their employment practice of classifying deliver drivers as independent contractors was seriously suspect. Nonetheless, Defendants continued to classify delivery drivers as independent contracts, as opposed to hourly employees. In short, Defendants' decision to improperly classify its workers can only be described as willful.

47. At all times relevant to this action, Defendants were an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

48. Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

49. At all times relevant to this action, Plaintiffs were "employee[s]" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

50. Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

51. At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

The violations of the FLSA, 29, U.S.C. §§ 206 and 207, committed by Defendants and alleged in this Fourth Amended Collective Action Complaint present common questions of law and fact.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. FAILURE TO PAY OVERTIME WAGES

#### (*Plaintiffs Claude Boconvi and James Mack*)

52. Plaintiffs re-allege and incorporate all previous paragraphs herein.

53. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

54.     Defendants violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

55.     Upon information and belief, Defendants have corporate policies of evading overtime pay for its hourly workers.

56.     Defendants' violations of the FLSA were knowing and willful.

57.     By failing to compensate Plaintiffs at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).

58.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

59.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

## VIOLATION OF THE CALIFORNIA LABOR CODE §§ 510, 1194, and IWC WAGE ORDER NO. 9 - FAILURE TO PAY MINIMUM WAGE AND OVERTIME

### (*Plaintiff James Mack*)

60.     MACK re-alleges and incorporates all previous paragraphs herein.

61.     At relevant times, in addition to the FLSA, Defendants were required to compensate MACK at one and one-half times the regular rate of pay for all hours worked in excess of eight (8) hours per day and/or forty (40) hours per week.

62.    At all relevant times, Defendants suffered, permitted, and/or required MACK to work in excess of eight hours per day and/or forty hours per week without being overtime pay as required by California law.

63.    As a result of the unlawful acts of Defendants, MACK was deprived of his rightfully earned overtime pay in amounts to be determined at trial.

64.    The California Industrial Welfare Commission Order No. 9-2011 (effective July 1, 2004 as amended) ("Wage Order No. 9") regulates the wages, hours and working conditions in the transportation industry.

65.    Wage Order No. 9 applies to all persons employed in the transportation industry whether paid on a time, piece rate, commission, or other basis.

66.    Defendants' conduct violated California Labor Code §§ 510, 1194, and IWC Wage Order No. 9.   Therefore, pursuant to California Labor Code § 1194, MACK is entitled to recover damages for overtime pay for all hours worked in excess of eight (8) hours per day or forty (40) hours per week, interest on that amount pursuant to California Labor Code § 218.6, plus reasonable attorneys' fees and litigation costs.

67.    None of the provisions of the California Labor Code can be contravened, set aside, abrogated, or waived by MACK.

68.    As a result of the foregoing conduct, MACK seeks unpaid overtime wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

**COUNT III**

**VIOLATION OF THE CALIFORNIA LABOR CODE § 226.8**
**WILLFUL MISCLASSIFICATION OF INDIVIDUALS**
**AS INDEPENDENT CONTRACTORS**

(***Plaintiff James Mack***)

69.     MACK re-alleges and incorporates all previous paragraphs herein.

70.     The California Labor Code, Section 226.8, prohibits the willful classification of individuals as independent contractors.

71.     The employment relationship between Defendants and MACK is described in the General Allegations above and certain Orders entered in the *Flores* matter, including those concluding Defendants misclassified MACK.

72.     As a result of the DOL's 2009 enforcement action, Defendants knew their employment practice of classifying deliver drivers as independent contractors was seriously suspect.   Nevertheless, Defendants continued to enter into Agreements with its delivery drivers endeavoring to maintain independent contractor relationships.

73.     As a result of the foregoing conduct, MACK seeks a declaration from the Court that Defendants have willfully misclassified him as an independent contractor.

**COUNT IV**

**VIOLATION OF THE CALIFORNIA LABOR CODE § 2802**
**FAILURE TO PROVIDE MILEAGE REIMBURSEMENT**

(***Plaintiff James Mack***)

74.     MACK re-alleges and incorporates all previous paragraphs herein.

75.     While acting on the direct instruction of Defendants and discharging his duties for

---

**COMPLAINT**              14              **CASE NO. 3:17-CV-02623**

them, MACK incurred work-related expenses. Such expenses include but are not limited to the costs of purchase or lease of vehicles; mileage and fuel, maintenance, and other vehicle operating costs; vehicle decals and other markings; various forms of insurance; communications equipment; electronic messaging service; cellular telephones; and uniforms and laundry services. Defendants have also reserved the right to hold drivers accountable for losses such as cargo loss or damage, bodily injury, and property damage claims, uncollected or lost C.O.D. payments, and "service claims" granted to customers. MACK necessarily incurred these substantial expenses and losses as a direct result of performing his job duties for Defendants.

76. Defendants failed to indemnify or in any manner reimburse MACK for these expenditures and losses. By misclassifying MACK as an "independent contractor," and further by requiring him to pay expenses and cover losses he incurred in direct consequence of the discharge of his duties for Defendants and/or in obedience to Defendants' direction, Defendants violated and continues to violate Cal. Labor Code § 2802.

77. As a direct and proximate result of Defendants' conduct, MACK suffered substantial losses according to proof, as well as pre-judgment interest, costs, and attorney's fees for the prosecution of this action.

78. MACK requests relief as described below.

## COUNT V

## VIOLATION OF THE CALIFORNIA LABOR CODE §§ 226, 226.3, IWC WAGE ORDER NO.9 – FAILURE TO FURNISH ACCURATE WAGE STATEMENTS

### (*Plaintiff James Mack*)

79. MACK re-alleges and incorporates all previous paragraphs herein.

---

**COMPLAINT**    15    **CASE NO. 3:17-CV-02623**

80. Cal. Labor Code § 226(a) and IWC Wage Order No. 9, § 7(B) require employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee. Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

81. Defendants knowingly and intentionally failed to furnish MACK with timely, itemized statements showing the total hours worked, as required by Cal. Labor Code § 226(a) and IWC Wage Order No.9, § 7(B). As a result, Defendants are liable to MACK for the amounts provided by Cal. Labor Code § 226(b) and for penalties, and attorneys' fees.

82. MACK requests relief as described below.

## COUNT VI

## VIOLATION OF THE CALIFORNIA LABOR CODE §§ 1174, 1174.5, IWC WAGE ORDER NO.9 – FAILURE TO KEEP ACCURATE PAYROLL RECORDS

### (*Plaintiff James Mack*)

83. MACK re-alleges and incorporates all previous paragraphs herein.

84. Defendants violated Cal. Labor Code § 1174 and IWC Wage Order No.9, 26 § 7(A) by willfully failing to keep required payroll records showing the actual hours worked each day by MACK. As a direct and proximate result of Defendants' failure to maintain payroll records, MACK suffered actual economic harm as he was precluded from accurately monitoring

---

**COMPLAINT**  16  **CASE NO. 3:17-CV-02623**

the number of hours worked and thus seeking all accrued overtime pay.

85.     MACK requests relief as described below.

## COUNT VII

## VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*

### (*Plaintiff James Mack*)

86.     MACK re-alleges and incorporates all previous paragraphs herein.

87.     Plaintiff MACK brings this action individually and on behalf of the general public pursuant to § 17200 *et seq*. of the California Business and Professions Code (the "Cal. Bus. & Prof. Code"), and the Unfair Competition Act (the "UCL").

88.     California Business and Professions Code §1 7204 prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." MACK seeks compensation for the loss of his property and the personal financial impacts he suffered as a result of Defendants' unfair business practices. Defendants' conduct, as described above, has been and continues to be deleterious to MACK who is seeking to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

89.     The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable, and/or fraudulent business acts or practices which injured MACK and caused him to lose money.

90.     The unlawful, unfair, unconscionable, and/or fraudulent business acts or practices adopted by Defendants, which caused MACK to lose of money, were conducted by Defendants in material part in the state of California and emanated to their business operations in other

**COMPLAINT**                                            17                                  **CASE NO. 3:17-CV-02623**

states. MACK was harmed and injured as a result of Defendants' conduct in California. As such, the UCL applies to his claims.

91. Defendants adopted unlawful business and employment policies, entered into agreements and conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable, and/or fraudulent business acts and practices nationwide, and that conduct harmed MACK causing him injury and financial loss. As such, the UCL applies to all such transactions and dealings. MACK has standing to assert UCL claims against Defendants.

92. Defendants have engaged and continues to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above, inclusive, to wit, by: (a) failing to pay to MACK overtime compensation pursuant to California Labor Code §§ 510 and 1194; (b) willfully misclassifying MACK as independent contractors, as opposed to employees, in violation of California Labor Code § 226.8; and (C) failing to pay to MACK and BOCONVI overtime compensation pursuant to the FLSA.

93. By failing to pay MACK overtime in violation of FLSA and the California Labor Code, Defendants violated the UCL.

94. Violations of the FLSA are unlawful acts which are independently actionable under the UCL. *Wang v. Chinese Daily News* (9th Cir. 08-56740 9/27/10); *In re Wells Fargo Home Mortgage Litig.,* 527 F. Supp. 2d 1053, 1066-69 (N.D. Cal. 2007).

95. By misclassifying MACK as an independent contractor in violation of FLSA and/or any other state or federal law or regulation, as described above, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

---

**COMPLAINT** 18 **CASE NO. 3:17-CV-02623**

96. By attempting to have MACK waive, abridge, or limit his rights under the FLSA and/or other applicable wage and hour laws in order to work as delivery drivers, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

97. By failing to maintain employment records under the FLSA and/or other applicable wage and hour laws, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

98. The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable, and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*. Defendants' acts and practices described herein offend established public policies, including, but not limited to those set forth in the FLSA and/or other applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

99. The unfair business practices set forth above have and continue to injure MACK and the general public and cause injury and the loss of money, as described further within. These violations have unjustly enriched the Defendants at MACK's expense. As a result, MACK is entitled to restitution.

100. MACK seeks, on his own, and on behalf of the general public, full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants by means of the unfair practices complained of herein.

101. The acts complained of herein occurred within four years of MACK filing his Consent to Sue and joining in the *Flores* action.

102.    MACK is informed and believes and on that basis allege that at all times herein mentioned Defendants have engaged in unlawful, deceptive and unfair business practices, as proscribed by California Business and Professions Code § 17200 *et seq.*, including those set forth herein above thereby depriving MACK and other members of the general public the minimum working condition standards and conditions due to them under the California laws and Industrial Welfare Commission wage orders as specifically described therein.

103.    The conduct of Defendants and their agents, employees, managerial employees as described herein was oppressive, fraudulent, malicious, and done in conscious disregard of Plaintiff's rights.

104.    Such a pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiff in a civil action for the unpaid balance of the full amount of wages owing, including interest thereon, penalties, attorneys' fees, and costs of suit according to the mandate of California Labor Code.

105.    Such a pattern, practice, and uniform administration of an unlawful, deceptive, and unfair business practice as described herein creates an entitlement to recovery by Plaintiff in a civil action for damages and wages owed.

## COUNT VIII

### FEDERAL COMMON LAW SUCCESSOR LIABILITY

#### (*Plaintiffs Claude Boconvi and James Mack*)

106.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

---

**COMPLAINT**                    20                    **CASE NO. 3:17-CV-02623**

107.    Under the federal common law successorship doctrine, liabilities of the predecessor may be passed to the successor "when 1) the subsequent employer was a bona fide successor and 2) the subsequent employer had notice of the potential liability."   *Steinbach v. Hubbard* 51 F.3d 843, 845-846 (9th Cir. 1995).    Successor liability has been extended to almost every employment statute, including the FLSA.    *Id.* at 845.

108.    The merger agreement by which DYNAMEX (with TRANSFORCE as guarantor) acquired the assets and business operations of VELOCITY EXPRESS, included notice of the potential liability as to Plaintiffs and the *Flores* Class for unpaid overtime due to Plaintiffs' misclassification as independent contractors.    Plaintiffs intend to continue acquiring all information relating to the purchase and acquisition of VELOCITY EXPRESS by DYNAMEX through appropriate discovery and reserve the right to amend these pleadings as necessary to incorporate any new information acquired.

109.    Upon acquisition of VELOCITY EXPRESS in February 2013 DYNAMEX and TRANSFORCE substantially continued VELOCITY EXPRESS's "same-day North American package and courier" services; using the same facilities, machinery and equipment; employing the same employees; completing the same delivery route and servicing the same customers and clients.    *See Exhibit* D.

110.    Under the totality of circumstances, there are sufficient indicia of continuity between DYNAMEX, TRANSFORCE, and VELOCITY EXPRESS to hold DYNAMEX and/or TRANSFORCE as the successor in interest to VELOCITY EXPRESS for purposes of the FLSA allegations complained herein.    By virtue of its successor status, and with actual knowledge and

constructive notice of the potential liability complained of herein, DYNAMEX and/or TRANSFORCE are liable for Plaintiffs' and the Class's damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A. Declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

B. Declaring that Defendants violated their obligations under the FLSA;

C. Declaring that Dynamex and/or TransForce, Inc. are successors in liability and liable for all of Plaintiff's;

D. Granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid overtime pay calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked in excess of forty (40) hours per week for the past four years;

E. Awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid minimum wages and overtime found owing to Plaintiffs;

F. Awarding appropriate restitution in an amount to be proven at trial for Defendants' violation of Section 17200 of the UCL;

G. Awarding actual and statutory damages for Defendants' violation of the California Labor Code;

H. Awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action;

I. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

J. Such further relief as this court deems appropriate.

Respectfully Submitted,

Dated: May 5, 2017                    By:      /s/ Christopher P. Ridout
                                              Christopher P. Ridout (SBN 143931)
                                              christopher.ridout@zimmreed.com
                                              Caleb LH Marker (SBN 269721)
                                              caleb.marker@zimmreed.com

---

**COMPLAINT**                    22                    **CASE NO. 3:17-CV-02623**

ZIMMERMAN REED, LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Local Counsel for Plaintiffs*

Timothy J. Becker (MN Bar No. 256663)*
tbecker@johnsonbecker.com
Jacob R. Rusch (MN Bar No. 391892)*
jrusch@johnsonbecker.com
Molly E. Nephew (MN Bar No. 397607)*
mnephew@johnsonbecker.com
*pro hac vice anticipated*
JOHNSONBECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801

Jason J. Thompson (MI Bar No. P47184)*
jthompson@sommerspc.com
Jesse L. Young (MI Bar No. P72614)*
jyoung@sommerspc.com
*pro hac vice anticipated*
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300

*Trial Counsel for Plaintiffs*