UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDE K BOCONVI, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>VELOCITY EXPRESS, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-02623-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**<br><br>Re: ECF Nos. 41, 53 70, 77 |

Before the Court is Plaintiffs' motion for approval of attorney's fees and costs. The Court will grant the motion in part and deny it in part.[1]

## I.  BACKGROUND

This case has an unusual procedural posture. Plaintiffs in this case were originally part of the collective in Flores v. Velocity Express, LLC, a related action brought against Defendants for violations of the Fair Labor Standards Act (FLSA) and other California labor laws ("the Flores action"). No. 3: 12-cv-05790-JST, ECF No. 1. The collective consists of current and/or former delivery drivers who work or worked for Defendants. Id. ¶ 13. The Flores plaintiffs allege that Defendants misclassified the drivers as independent contractors instead of as employees, and failed to provide proper compensation, meal breaks, rest periods, mileage reimbursements, and wage statements. Id. ¶ 4. On April 24, 2017, the Court granted the Flores plaintiffs' motion for partial summary judgment, finding they were employees. Flores v. Velocity Express, LLC, No. 3: 12-cv-05790-JST, ECF No. 260.

The parties stipulated to a bellwether trial process whereby the claims of a small group of

---

[1] The Court also grants Defendants' administrative motion to submit a statement of recent decision, ECF No. 77.

individual plaintiffs' claims would be selected for discovery and trial. ECF No. 1 ¶ 2.[2] The claims of Claude K. Boconvi and James R. Mack were selected for the first wave of bellwether trials.[3] Id. ¶¶ 1-3. So that judgment could be separately entered, the parties agreed that Boconvi and Mack would file a complaint in the Northern District of California ("the Boconvi action") and also file a stipulation incorporating certain rulings from the Flores action. Id. ¶ 3. Ultimately, however, the claims were resolved by stipulation rather than trial. On May 31, 2017, the parties stipulated to judgment for Boconvi in the amount of $2,500 and for Mack in the amount of $60,000. ECF No. 35 at 2. The parties agreed that the stipulation was not an admission of liability, but rather a means to expedite Defendants' appellate rights with regard to the Court's summary judgment ruling and to provide a basis for ruling on Plaintiffs' motion for attorney's fees and costs. ECF No. 35.

Plaintiffs filed a motion for attorney's fees and costs on August 2, 2017. In response, Defendants acknowledged that Plaintiffs were entitled to an interim award of fees but argued that the vast majority of the fees and costs pertained to work in the still-pending Flores action and were not separately attributable to the Boconvi case. ECF No. 55 at 6. Defendants proposed that the Court limit fees and costs to those incurred after the Boconvi action was filed in May 2017. Id. at 8. Defendants also objected to many of Plaintiffs' requested fees and costs as unreasonable.[4] See id.

The Court held a hearing on Plaintiffs' motion for attorney's fees and costs on September 28, 2017. From the bench, the Court rejected the argument that the entirety of the fees incurred before May 2017 were not compensable. The Court acknowledged, however, that some of the fees and costs incurred before that date might not have been reasonably related to the ultimate success of the Boconvi litigation. The Court also found that some of Plaintiffs' expenses, such as

---

[2] Unless otherwise noted, all electronic filing numbers (ECF) refer to the docket in this action.
[3] Former plaintiff Charles Chambers was originally also chosen for the first bellwether tranche. The Court granted the motion to dismiss Charles Chambers for failure to prosecute on August 11, 2017. Flores v. Velocity Express, LLC, No. 3: 12-cv-05790-JST, ECF No. 291.
[4] Defendants also filed a motion to strike portions of Plaintiffs' motion for attorneys' fees. ECF No. 53. The Court did not rely on the portions of Plaintiffs' motion to which Defendants objected, and the motion to strike is therefore denied as moot.

first class travel and UberBlack fees, were not reasonable. Accordingly, the Court ordered supplemental briefing to give both Plaintiffs and Defendants a chance to submit another request that included (1) only fees reasonably related to the success of the Boconvi litigation and (2) only reasonable expenses. The Court also expressed a desire to give Defendants an opportunity to offer more specific arguments that certain work was not necessary to the interests of the Boconvi or Mack or did not contribute to their successful result.

Plaintiffs now request $2,289,085.50 in attorney's fees and $148,277.45 in costs in their supplemental motion for attorney's fees and costs. ECF No. 70. Defendants ask the Court to award no more than $1,177,291.88 in fees and $129,424.52 in costs.

## II.     LEGAL STANDARD

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981). The FLSA provides for an award of reasonable fees and costs. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under a fee-shifting statute, the court must calculate awards for attorneys' fees using the lodestar method." Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003) (internal quotation marks and citations omitted).

To "determin[e] the amount of a reasonable fee" under the lodestar method, a court calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v.Eckerhart, 461 U.S. 424, 433 (1983). The district court should exclude "hours that were not reasonably expended." Id. at 434 (internal quotation marks and citations omitted). "[T]he determination of fees 'should not result in a second major litigation,'" and "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal . . . is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011) (quoting Hensley, 461 U.S. at 437).

## III. DISCUSSION

### A. Work Unrelated to the Boconvi Action

Plaintiffs contend that all hours billed and costs submitted in their supplemental motion are "reasonably related to the unmitigated victory [for] the first two bellwether Plaintiffs." ECF No. 70 at 2. Plaintiffs explain how the billing entries under the Flores case relate to Boconvi and Mack's stipulated judgment. Id. at 3-8. For their part, Defendants have identified billing entries that they contend are unrelated to the Bonconvi action. The Court has reviewed these objections and will remove the $200.00 billed by Jacob Rusch for creating "pro hac motion for S.D. Cal;" $325.00 billed by Timothy Becker for reviewing "emails re Comvest as defendant and issues related to same;" $1,175 billed by Jacob Rusch for drafting "PAGA letter and correspondence to opposing counsel re service;" $205.50 billed by the Sommers Schwartz firm for discussing "new Illinois clients and issues with class motion;" $105 billed by Sommers Schwartz for "telephone conference with potential opt-in-plaintiff regarding intake;" $52.50 billed by Sommers Schwartz for "telephone conference with potential opt-in plaintiff Raymundo Duran regarding missed opt-in deadline;" $52.50 billed by Sommers Schwartz for "[r]eceipt of RightSignature consent to join from Cheikkhouna Lo;" and $52.50 billed by Sommers Schwartz for "lengthy telephone conference with opt-in plaintiff Jereome Peavy regarding status of case and strategy going forward." See ECF No. 73 at 16, 18, 28, 139, 148, 149.

Defendants also object to work done by Sommers Schwartz in relation to the depositions of Brad Moore, Kenneth Johnston, Lorenzo Anderson, and Tim Clippard. See ECF No. 73 162-171. Defendants contend that these depositions are not relevant to Boconvi and Mack's individual cases, although they might have been relevant if some of the other Plaintiffs had been selected as bellwether representatives. Plaintiffs do not address this objection in their response. See ECF No. 74. Plaintiffs have the burden of submitting evidence supporting hours worked and rates claimed, see Hensley, 461 U.S. at 433, and without additional information, the Court cannot find that these fees and expenses reasonable. Therefore, Sommer Schwartz's fee request is reduced by an additional $34,230.

In total, Plaintiffs' fee request is reduced by $36,398.

4

### B. Plaintiffs' Summary Judgment Motion on Misclassification

Defendants suggest that all billing entries in connection with Plaintiffs' summary judgment motion on misclassification be reduced by one third. ECF No. 73 at 7. Defendants argue that the motion related to the misclassification of three individuals: Claude K. Boconvi, James R. Mack, and Charles Chambers. Id. Defendants point out that Charles Chambers was later dismissed with prejudice and is no longer involved in this litigation. Id.

The Court agrees with Defendants that it "is undisputable that some of the hours" spent on the summary judgment motion were spent specifically on Chambers' claim. Id. However, it would not be appropriate for the Court to reduce all the billing entries in connection with the summary judgment motion by one-third, because a substantial portion of the work performed on the motion benefitted all three individuals. Stated differently, subtracting one party does not reduce the workload by one third. The Court will reduce the billing entries in connection with Plaintiffs' summary judgment motion on misclassification by ten percent. Upon review of the billing entries, the Court determined that Johnson Becker billed $168,315 for work on the summary judgment motion for misclassification and Zimmerman Reed billed $337.50, for a total of $168,652.50.[5] Plaintiff's fee request is therefore reduced by $16,865.25.

### C. Itemized Objections

Defendants submitted itemized objections to Plaintiffs' billing records. See ECF No. 73. When reviewing these objections, the Court keeps in mind that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). Nonetheless, upon reviewing the billing records, the Court finds some reason for reduction.

First, the Court finds several of the entries related to clerical tasks that are not compensable or, at the very least, should not be billed at an attorney's hourly rate. See Nadarajah v. Holder,

---

[5] Plaintiffs removed "the time and costs spent conducting discovery specifically related to Chambers" so the Court only considered the billing entries for work related to the summary judgment motion itself. See ECF No. 74 at 14.

569 F.3d 906, 921 (9th Cir. 2009) ("Apparently, the government contends that the filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates. This contention has merit."). See also Avila v. Los Angeles Police Dep't, No. CV1101326SJOFMOX, 2012 WL 12894470, at *3 (C.D. Cal. Aug. 2, 2012), aff'd, 758 F.3d 1096 (9th Cir. 2014) (applying Nadarajah to an FLSA action). Here, for example, attorneys billed for preparing binders, calling the clerk's office, filing documents, printing copies, creating folders and setting up video conferencing equipment. See e.g ECF No. 73 at 51, 58, 63, 73 128. These are not attorney tasks.

Next, the Court finds that several of the entries contain insufficient billing records. Entries such as "PSC call" and "KER Delta's opposition to TT's motion to amend" do not indicate whether this work was related to Boconvi or Mack. See e.g., ECF No. 73 at 18, 20.[6] Further entries such as "reviewed email," "SJ motion," and "review documents" do not provide enough detail about the work performed to allow the Court to determine whether the claimed hours are reasonable. See e.g., ECF No. 73 at 29, 74, 112, 113, 114, 115, 116.

Defendants also object to many of the individual billing entries as excessive or duplicative. They contend that too many lawyers worked on particular tasks or that more junior lawyers should have taken the place of senior lawyers in certain billing entries. See ECF 73. "The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work, but determining whether work is unnecessarily duplicative is no easy task." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). It is impossible for this Court to determine which tasks could have been completed just as successfully with a more junior lawyer or a fewer number of lawyers, or to identify which communications between firms were excessive. However, the Court notes there are entries for tasks such as *pro ha vice* motions and document review that might have been completed by more junior attorneys, and entries such as deposition review that were completed by many attorneys. See ECF No. 73 at 15, 69, 129. "While use of many attorneys with various expertise and levels of experience may contribute to the likelihood of

---

[6] Neither "TT" nor "Delta" appear to be parties to the case.

6

success for the client, it also results in inefficiency . . . ." L.H. v. Schwarzenegger, 645 F. Supp. 2d 888, 902 (E.D. Cal. 2009). Accordingly, some reduction in fees is appropriate.[7]

"The Ninth Circuit has held that a district court may 'impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" Asante v. California Dep't of Health Care Servs., 237 F. Supp. 3d 933, 942 (N.D. Cal. 2017) (quoting Moreno, 534 F.3d at1112). Here, the Court finds that a five percent "haircut" is warranted.[8]

### D.     Fee Application

Defendants also ask for a fifty percent across-the-board reduction for all billing entries related to Plaintiffs' fee application. The Court will not grant this request. Plaintiffs' first fee request contained entries that Plaintiffs admit were "inadvertently included." ECF No. 74 at 15. But this was not the only reason why supplemental briefing was required: the Defendants' original opposition proposed that the Court only consider the fees and costs incurred from May 4, 2017 forward, see ECF No. 55, and the Court rejected that proposal. Thus, both parties contributed to the Court's decision to ask for supplemental briefing, and the Defendants were, if anything, benefitted by it. Further reductions beyond those already identified are unnecessary.

### E.     Proportionality

Defendants argue that Plaintiffs' fee application is out of line with awards in similar cases because their requested fees are over 36.6 times their actual recovery. ECF No. 73 at 4. This argument is a strawman and not persuasive. First, although the work for which Plaintiffs are now being compensated benefitted the specific Boconvi plaintiffs, much of it will benefit many other plaintiffs as well. Moreover, Defendants have been aware from the inception of the case that the

---

[7] Defendants also ask for further across-the-board reductions of fifty percent for Zimmerman Reed, forty percent for Sommers Schwartz, and thirty percent for Johnson Becker to take into account attorney overstaffing that resulted in extensive duplication of work and many internal conferences. ECF No. 73 at 8. The Court has already considered Defendants specific objections that certain billing entries are duplicative, excessive and/or required unnecessary communication between law firms. These objections factored into the Court's decision to reduce Plaintiffs' requested fees. The Court denies this additional specific request.

[8] This five percent reduction will be taken from the total fee award after the billing entries unrelated to Boconvi and Mack are removed and the fees for the summary judgment motion on misclassification are reduced by ten percent.

1   FSLA is a fee-shifting statute that guarantees "reasonable payment for the time and effort
2   expended if the case is won." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,
3   483 U.S. 711, 726 (1987). When judgment is entered in favor of plaintiffs, the case is clearly
4   "won." Finally, Defendants litigated this case in a way that was likely to produce high attorney
5   fees. Not surprisingly, it did so. Plaintiffs' counsel are entitled to be compensated for the effort
6   required to reach this stage of the litigation.

### F. Costs

#### 1. Sommers Schwartz and Zimmerman Reed

Defendants contend that Zimmerman Reed failed to submit any receipts for their proposed $1,173.55 in costs. ECF No. 73 at 10. Plaintiffs do not dispute this allegation. See ECF No. 74. Defendants also contend that Sommers Schwartz failed to submit receipts for its pre-2016 expenses and that the dates on the receipts for the 2016 and 2017 expenses do not match up. ECF No. 73 at 10. Plaintiffs do not dispute these allegations either. See ECF Nos. 46-3, 74.

The Court will not award unsubstantiated costs. Accordingly, Zimmerman Reed and Sommers Schwartz's request for costs are denied.

#### 2. Experts

Defendants request a one-third reduction on Plaintiffs' expert costs because the Plaintiffs' expert calculated alleged damages for all three bellwether representatives, including Charles Chambers. ECF No. 73 at 10-11. As with the similar request discussed above, the Court again concludes that reducing the number of plaintiffs by one-third does not reduce the total amount of work by one-third. The Court will reduce Plaintiffs' expert costs by ten percent. Therefore, Plaintiffs' expert costs will be reduced by $2,120.90.

#### 3. Meals and Incidental Expenses

Defendants do not object to any of Johnson Becker's supplemental meal and incidental expenses as unreasonable.[9] Instead, they argue that personal meal expenses should not be awarded at all, citing cases from the Middle District of Florida. ECF No. 73 at 11. Courts in this

---

[9] Plaintiffs contend that their meal and incidental expenses are reasonable because they are in line with the U.S. General Services Administration ("GSA") per diem rates. ECF No. 70 at 9-10.

District, however, often award reasonable meal coasts.  See, e.g., Oldoerp v. Wells Fargo & CompanyLong Term Disability Plan, No. 3:08-CV-05278 RS, 2014 WL 2621202, at *8 (N.D. Cal. June 12, 2014) ("[n]umerous judges in this district have approved requests for out-of-pocket litigation costs [including meals] under the 'prevailing practice' standard …."); see also Moralez v. Whole Foods Mkt., Inc., No. C 12-01072 CRB, 2013 WL 3967639, at *8 (N.D. Cal. July 31, 2013); Nobles v. MBNA Corp., No. C 06-3723 CRB, 2009 WL 1854965, at *3 (N.D. Cal. June 29, 2009).  Accordingly, the Court will not reduce the meal and incidental expenses.

## CONCLUSION

Plaintiffs' request fees and costs is granted in part.  The fees are reduced by $36,398 to account for work not related to the Boconvi action.  The billing entries in connection with Plaintiffs' summary judgment motion on misclassification are reduced $16,865.25. From there, the remaining fees are reduced by five percent.  Therefore, Plaintiffs are awarded $2,124,031.14 in fees.

Johnson Becker's request for costs is granted, however the expert costs are reduced by ten percent.  Sommers Schwartz and Zimmerman Reed's requests for costs are denied.  Therefore, Plaintiffs are awarded $136,575.60 in costs.

**IT IS SO ORDERED.**

Dated: May 17, 2018

_____
JON S. TIGAR
United States District Judge